826 F.2d 794
 44 Fair Empl.Prac.Cas. 1180,
44 Empl. Prac. Dec. P 37,328,
2 Indiv.Empl.Rts.Cas. 1112
John J. SOROSKY, Plaintiff-Appellant,
v.
BURROUGHS CORPORATION, Defendant-Appellee.
 No. 85-5707.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 10, 1986.
Originally Filed Sept. 2, 1986.
Petition for Rehearing Granted Dec. 30, 1986.
Prior Opinion Withdrawn Per Order Dated Aug. 25, 1987.
New Opinion Filed Aug. 25, 1987.
 
 Memel, Jacobs, Pierno, Gersh & Ellsworth, Marvin M. Lager and Jean Manning, Los Angeles, Cal., for plaintiff-appellant.
 Epstein, Becker, Borsody & Green, James P. Mulkeen and Sandra R. King, Los Angeles, Cal. (Thomas H. Williams, Burroughs Corp., Detroit, Mich., of counsel), for defendant-appellee.
 Orrick, Herrington & Sutcliffe, Ralph H. Baxter, Jr., for amicus curiae California Employment Law Council.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, PREGERSON and BEEZER, Circuit Judges.
 ORDER
 The prior opinion in this case, filed September 2, 1986, is hereby withdrawn. The attached opinion is filed in its place.
 WALLACE, Circuit Judge:
 
 
 1
 Sorosky appeals from a district court order granting summary judgment for Burroughs Corporation (Burroughs) in Sorosky's action arising from his termination by Burroughs. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm in part and reverse in part.
 
 
 2
 * Sorosky began working for Burroughs about 1956. By 1974, Burroughs had promoted Sorosky to the position of Manager of the Systems Documentation Section in its Santa Barbara facility. In 1981, Burroughs closed a major portion of this facility and transferred its two major Santa Barbara projects to Burroughs plants in Mission Viejo and Pasadena. Although many Santa Barbara employees were transferred to other facilities, Sorosky was given only a temporary assignment at the Pasadena plant. The parties dispute whether Burroughs offered Sorosky another permanent job before the temporary assignment ended.
 
 
 3
 Following his lay-off, Sorosky filed a charge with the California Department of Fair Employment and Housing (DFEH) alleging that Burroughs had fired him because of his age. At the time he was terminated, Sorosky was 55. He received a right-to-sue letter from the DFEH and then brought suit in California state court against Burroughs and Does I-XX. Sorosky pleaded causes of action for breach of contract/wrongful discharge, misrepresentation, breach of the implied covenant of good faith and fair dealing, conspiracy to interfere with a protected property interest, employment discrimination on the basis of age, and declaratory relief.
 
 
 4
 Burroughs successfully removed the suit to the federal district court, which ultimately granted summary judgment in favor of Burroughs. We review de novo the district court's order granting summary judgment, Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983), to determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he [district] judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." An issue is "genuine" if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted).
 
 II
 
 5
 Sorosky challenges the district court's jurisdiction, contending that removal was improper. We must first consider whether Sorosky has preserved his challenge to removal.
 
 A.
 
 6
 "[W]here after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." Grubbs v. General Electric Credit Corp., 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972) (Grubbs ). The Grubbs rule applies when, as in the present case, the merits are reached and determined on a motion for summary judgment. Stone v. Stone, 632 F.2d 740, 742 (9th Cir.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981).
 
 
 7
 Sorosky contends that he complied with the Grubbs requirement of an "objection" because he unsuccessfully moved to remand the action to the state court. In response, Burroughs contends that Sorosky has not preserved his objection to removal because he failed to seek an interlocutory appeal of the district court's order denying his motion to remand. Our prior cases require him to do so. See Gould v. Mutual Life Insurance Co., 790 F.2d 769, 774 (9th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 580, 93 L.Ed.2d 582 (1986); Lewis v. Time Inc., 710 F.2d 549, 552 (9th Cir.1983); Sheeran v. General Electric Co., 593 F.2d 93, 97-98 (9th Cir.), cert. denied, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). Sorosky argues, however, that the Supreme Court implicitly held in Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (Franchise Tax ), that a litigant need not apply for an interlocutory appeal to preserve an attack on removal jurisdiction. The Court in that case considered a challenge to removal, but did not mention Grubbs or state whether the plaintiff had applied for an interlocutory appeal. From these circumstances, Sorosky infers that an interlocutory appeal is unnecessary. When, however, the Court fails explicitly to address an issue, we cannot assume that the Court implicitly addressed the issue and made a determination on the merits. We conclude, therefore, that the Supreme Court has not ruled on the question, and we are bound by our precedent. Because Sorosky did not seek an interlocutory appeal of the order denying his motion to remand, the only issue before us is whether the district court would have had jurisdiction if this case originally had been filed in that court.
 
 B.
 
 8
 Burroughs identifies two separate bases of original jurisdiction for the district court, diversity of citizenship, 28 U.S.C. Sec. 1332, and the existence of a federal question, 28 U.S.C. Sec. 1331. Because we conclude that federal question jurisdiction exists, it is unnecessary for us to consider diversity.
 
 
 9
 Jurisdiction under 28 U.S.C. Sec. 1331 exists when a civil action arises under federal law. "[A] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Insurance Co. v. Taylor, --- U.S. ----, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (Metropolitan Life ). Burroughs contends that Sorosky's complaint raises issues of federal law because some or all of his state claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001-1461. Ordinarily, however, federal preemption is a defense. As such, it does not appear on the face of a well-pleaded complaint, and therefore does not provide federal question jurisdiction. See Metropolitan Life, 107 S.Ct. at 1546.
 
 
 10
 Civil claims that are preempted by ERISA and that are redressable under ERISA section 502(a), 29 U.S.C. Sec. 1132(a), however, are excepted from this general rule because Congress has "so completely" preempted this area "that any civil complaint raising [section 502(a) ] claims is necessarily federal in character." Id. We recognize that Metropolitan Life involved a claim under section 502(a)(1)(B) of ERISA, 29 U.S.C. Sec. 1132(a)(1)(B). It is clear from the Court's analysis in Metropolitan Life, however, that the same rule is applicable to the section 502(a)(3) claims alleged in this case as well. Id. at 1547; see also H.R.Conf.Rep. No. 93-1280, p. 327 (1974), U.S.Code Cong. & Admin.News 1974, p. 4639. Therefore, our determination of the jurisdictional question turns on whether Sorosky's claim is preempted, and if so, whether his claims can be redressed under section 502(a).
 
 
 11
 The preemption issue seems clear to us. Under ERISA's "virtually unique pre-emption provision," Franchise Tax, 463 U.S. at 24 n. 26, 103 S.Ct. at 2854 n. 26, with certain limited exceptions, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in [section 4(a) of ERISA] and not exempt under [section 4(b) of ERISA]." ERISA Sec. 514(a), 29 U.S.C. Sec. 1144(a). Burroughs's employee benefit plan falls within the scope of ERISA Sec. 4(a), 29 U.S.C. Sec. 1003(a), and is not exempt under section 4(b), 29 U.S.C. Sec. 1003(b). Sorosky's claims are therefore preempted insofar as they "relate to" the employee benefit plan of Burroughs. Congress intended that the words "relate to" be interpreted broadly. Pilot Life Insurance Co. v. Dedeaux, --- U.S. ----, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98-99, 103 S.Ct. 2890, 2900-01, 77 L.Ed.2d 490 (1983) (Shaw ). State law causes of action relate to an employee benefit plan if they have "a connection with or reference to such a plan." Shaw, 463 U.S. at 97, 103 S.Ct. at 2900.
 
 
 12
 Sorosky initially pleaded six claims, but he does not challenge the summary judgment entered with respect to his second (misrepresentation) and sixth (declaratory relief) claims. His first claim for "breach of contract/wrongful discharge" actually includes several different theories. Certain of the allegations frame a theory relating to Burroughs's employee benefit plan. In substance, Sorosky alleges that Burroughs agreed in writing to provide him with monthly retirement benefits and then sought to prevent him from acquiring those benefits. To the extent that this first claim refers to the employee benefit plan, it is preempted. Sorosky also alleges breach of contract or wrongful discharge on theories that have no relationship to the benefit plan--for example, discharge without good cause. This first claim is not preempted to the extent it relies on theories independent of the benefit plan.
 
 
 13
 Sorosky's third claim, for breach of the duty of good faith and fair dealing, and his fourth claim, alleging conspiracy to interfere with a protected property interest, for the most part incorporate the allegations made in the first claim. Therefore, the third and fourth claims are preempted to the same extent as the first claim. Burroughs does not contend that Sorosky's fifth claim for violation of the California Fair Employment and Housing Act (FEHA), California Government Code Sec. 12941, is preempted. In any event, we have previously held that ERISA does not preempt FEHA provisions that "merely prohibit employers from discriminating against employees on the basis of age, race, sex, or religion." Lane v. Goren, 743 F.2d 1337, 1340 (9th Cir.1984).
 
 
 14
 Thus, Sorosky's claims are, in part, preempted by ERISA. Therefore, we next consider whether the preempted claims are within the scope of ERISA Sec. 502(a). Section 510 of ERISA provides:
 
 
 15
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.... The provisions of [section 502 of ERISA] shall be applicable in the enforcement of this section.
 
 
 16
 29 U.S.C. Sec. 1140. Under section 502(a)(3) of ERISA,
 
 
 17
 A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
 
 
 18
 29 U.S.C. Sec. 1132(a)(3).
 
 
 19
 Sorosky therefore had a federal claim under section 502(a)(3) to enforce his right under section 510 to non-interference with his employee benefits. We need not address whether Sorosky could seek damages under section 502(a)(3). The allegations in Sorosky's complaint that relate to the employee benefit plan state a claim under, and are therefore within the scope of, section 502(a)(3) even if that section does not provide the entire remedy that Sorosky seeks in his complaint. These claims are thus so completely preempted as to state a claim arising under federal law. Metropolitan Life, 107 S.Ct. at 1547.
 
 
 20
 Pursuant to section 502(e)(1) of ERISA, 29 U.S.C. Sec. 1132(e)(1), the district courts have exclusive jurisdiction over actions brought under section 502(a)(3). Furthermore, the district court may exercise pendent jurisdiction over state law claims arising from a nucleus of operative fact common to both the state law claims and the ERISA claim. See United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Sorosky's non-preempted state law claims are thus pendent to his ERISA claim. The district court therefore would have had jurisdiction over all of Sorosky's claims if they had been filed in district court originally. Pursuant to Grubbs, 405 U.S. at 702, 92 S.Ct. at 1347, subject matter jurisdiction was proper.
 
 
 21
 There is one lack of congruity with this jurisdictional analysis. Because ERISA has preempted the state claims and jurisdiction is exclusive in the federal court, 29 U.S.C. Sec. 1132(e)(1), under the doctrine of derivative jurisdiction, the district court could not exercise removal jurisdiction. See Clorox Co. v. United States District Court, 779 F.2d 517, 522 (9th Cir.1985). As this action was filed prior to the effective date of the Judicial Improvements Act of 1985, Pub.L. No. 99-336, Sec. 3(a), 100 Stat. 633, 637 (June 19, 1986), 28 U.S.C. Sec. 1441(e), which eliminates the derivative jurisdiction roadblock, removal was impossible. The district court discussed this issue. But here, we are not analyzing whether removal was proper or possible. The single question before us is whether the action could have been initially filed in the federal district court. See Grubbs, 405 U.S. at 702, 92 S.Ct. at 1347. Because this complaint complies with the Metropolitan Life analysis and, therefore, could be filed in the district court, our jurisdictional inquiry terminates.
 
 
 22
 One consequence of complete preemption is that Sorosky has stated a valid ERISA claim. Nevertheless, Sorosky does not contend on appeal that summary judgment was improperly granted with respect to his action to the extent that it states an ERISA claim. Therefore, we do not address nor foreclose further consideration of this issue. We need only consider the propriety of summary judgment with respect to Sorosky's state law claims that are not preempted. Sorosky does not appeal summary judgment on his state law claim for conspiracy to interfere with a protected property interest. We now treat in turn the summary judgment granted on the remaining claims: breach of contract/wrongful discharge, breach of the covenant of good faith and fair dealing, and age discrimination.
 
 III
 
 23
 Sorosky argues that his breach of contract/wrongful discharge claim alleged three different theories of recovery under California law: express contract, implied-in-fact contract, implied-in-law contract. We address whether summary judgment was appropriate under each of these theories.
 
 A.
 
 24
 The district court held that the allegations do not establish a tort under California law and must stand or fall under contract law. Sorosky does not dispute this analysis. The district court then held that enforcement of the oral contract is barred by California's statute of frauds:
 
 
 25
 The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: (a) An agreement that by its terms is not to be performed within a year from the making thereof.
 
 
 26
 Cal.Civ.Code Sec. 1624 (West 1985 & Supp.1987). Burroughs contends that Sorosky is asserting the existence of a contract not to be performed within one year. Sorosky disagrees.
 
 
 27
 Under California law, "the statute of frauds does not apply to an employment contract unless its terms provide that the employee cannot completely perform it within one year from the making of the contract." White Lightning Co. v. Wolfson, 68 Cal.2d 336, 343, 66 Cal.Rptr. 697, 438 P.2d 345 (1968); accord Eisenberg v. Insurance Co. of North America, 815 F.2d 1285, 1291 (9th Cir.1987). Sorosky does not contend that he had an employment contract for a minimum term in excess of one year. Instead, he maintains that Burroughs agreed to employ him so long as he satisfactorily performed absent an economically necessitated reduction in force. "[A]n oral agreement with an alleged duration of 'so long as plaintiff should satisfactorily perform' ... is for an indefinite duration, may be performed within one year, and does not come within the statute of frauds...." Munoz v. Kaiser Steel Corp., 156 Cal.App.3d 965, 974, 203 Cal.Rptr. 345 (1984) (citations omitted); see also Plumlee v. Poag, 150 Cal.App.3d 541, 550, 198 Cal.Rptr. 66 (1984) (an employment contract does not come within the statute of frauds if a party "may rightfully terminate it within a year"). Therefore, the statute of frauds does not bar Sorosky's contract claims.
 
 
 28
 We therefore reverse the summary judgment on the breach of oral contract claim. Nevertheless, Burroughs also moved for summary judgment on this claim on the ground that Sorosky had produced insufficient evidence and argues this as an alternative ground for affirmance on appeal. The district court did not address this argument. The issue is a close one and a full analysis by the district court may assist us in our review. Under these circumstances, we believe the decisionmaking process will benefit from having the district court "make these determinations in the first instance." See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (Celotex ). We therefore remand the breach of oral contract claim for consideration of whether Sorosky produced sufficient evidence to withstand summary judgment.
 
 B.
 
 29
 A contract to discharge only for good cause can be implied from an employer's conduct. Cal.Civ.Code Sec. 1621 (West 1985); Pugh v. See's Candy, Inc., 116 Cal.App.3d 311, 329, 171 Cal.Rptr. 917 (1981). Factors relevant to determining the existence of such an implied-in-fact contract include "the duration of [an employee's] employment, the commendations and promotions he received, the apparent lack of any direct criticism of his work, the assurances he was given, and the employer's acknowledged policies." Id. Sorosky has pointed to evidence in the record relating to all these factors. The existence of an implied-in-fact contract is therefore a genuine issue that must be resolved by the trier of fact. Summary judgment was inappropriate.
 
 C.
 
 30
 To support his contention that a contract may be implied-in-law, Sorosky cites two California cases, Khanna v. Microdata Corp., 170 Cal.App.3d 250, 215 Cal.Rptr. 860 (1985) (Khanna ), and Cleary v. American Airlines, Inc., 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980) (Cleary ). These cases, however, concerned the implied covenant of good faith and fair dealing, the subject of Sorosky's third claim which we consider in the next part of this opinion. Because Sorosky has not presented any other arguments concerning an implied-in-law contract, this theory is entirely redundant of Sorosky's third claim. The district court could have stricken allegations with respect to this theory as being redundant. Fed.R.Civ.P. 12(f) ("upon the court's own initiative at any time, the court may order stricken from any pleading ... any redundant ... matter"). The summary judgment accomplished the same result and we therefore treat the order as one striking the allegations.
 
 IV
 
 31
 Sorosky also alleges a California law claim for breach of the implied covenant of good faith and fair dealing. Although California law on this issue is not at all clear, there appears to be a consensus that the covenant is implied in every employment contract, and that a breach can be shown at least in the circumstances where the employee can establish lengthy satisfactory service and that the employer acted contrary to its own policies in discharging the employee. See McCabe v. General Foods Corp., 811 F.2d 1336, 1340 (9th Cir.1987) (McCabe ); Khanna, 170 Cal.App.3d at 262, 215 Cal.Rptr. 860; Shapiro v. Wells Fargo Realty Advisors, 152 Cal.App.3d 467, 478, 199 Cal.Rptr. 613 (1984); Cleary, 111 Cal.App.3d at 453, 455, 168 Cal.Rptr. 722. Sorosky points to evidence satisfying both of these conditions and therefore a genuine issue of fact exists as to whether Burroughs breached the covenant.
 
 
 32
 Burroughs contends, however, that in Gianaculas v. Trans World Airlines, Inc., 761 F.2d 1391 (9th Cir.1985), we held that the covenant of good faith was not breached, under California law, when an employer discharged an employee for economic reasons. We do not read our holding in Gianaculas so broadly. In that case, we distinguished Cleary as dealing with a situation where the employees were dismissed without good cause. Id. at 1395. This is not inconsistent with our understanding of California law as expressed in Cancellier v. Federated Department Stores, 672 F.2d 1312, 1318 (9th Cir.), cert. denied, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982), where we held that proving longevity and breach of personnel policies was sufficient to make out a claim for breach of the implied covenant of good faith and fair dealing. Therefore, summary judgment was not appropriate on this claim.
 
 
 33
 We recognize that California law on wrongful discharge is not entirely clear. The California Supreme Court is considering at least one case that may shed new light on this issue. See Foley v. Interactive Data Corp., 174 Cal.App.3d 282, 219 Cal.Rptr. 866 (1985), reprinted in 193 Cal.App.3d 28, review granted, No. LA32148 (Cal. Jan. 30, 1986) (reargued April 6, 1987). If, when Foley is decided, it appears that we have misconstrued California law, we leave it open to the district court to reconsider the propriety of summary judgment with respect to Sorosky's claims for breach of implied covenant of good faith and fair dealing as well as, if appropriate, his claim for breach of contract/wrongful discharge.
 
 V
 
 34
 Under California's age discrimination statute, FEHA, it is "an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age." Cal.Gov.Code Sec. 12941 (West 1980 & Supp.1987). A California court has stated that "[a]lthough the wording of the Fair Employment Housing Act and title VII of the Federal Civil Rights Act of 1964 ... differs in some particulars, the antidiscriminatory objectives and the overriding public policy purposes are identical and we refer to those federal decisions where appropriate." County of Alameda v. Fair Employment & Housing Commission, 153 Cal.App.3d 499, 504, 200 Cal.Rptr. 381 (1984). Therefore, we may do so also. A plaintiff makes out a prima facie case of age discrimination if he demonstrates that he was over age forty, that he applied for a position for which he was qualified, and that a younger person with similar qualifications received the position. Cotton v. City of Alameda, 812 F.2d 1245, 1248 (9th Cir.1987) (Cotton ) (applying federal law). Establishing a prima facie case raises an inference of discrimination which the employer can rebut by presenting evidence that it had a legitimate, nondiscriminatory reason for its decision. Id. The plaintiff then must come forward with evidence that the employer's reason is a mere pretext to conceal its discriminatory motive. Id.
 
 
 35
 We need not consider whether Sorosky established a prima facie case of age discrimination, because we can resolve this claim by considering whether Burroughs put forward a nondiscriminatory reason for its decision and whether Sorosky produced sufficiently probative evidence that Burroughs's proffered reason was a pretext to conceal age discrimination. Burroughs asserts that, after closing the Santa Barbara facility, it decided to retain only those employees whose skills were necessary to the success of projects that were transferred to other facilities. Burroughs determined that Sorosky did not have skills necessary to the transferred projects. This reason for terminating Sorosky is legitimate and nondiscriminatory.
 
 
 36
 Sorosky can show that this reason is a pretext in two ways, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Cotton, 812 F.2d at 1248, quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981) (Burdine ). Sorosky raises three arguments on appeal to show pretext, one relating to the credibility of Burroughs's proffered explanation, and two others relating to direct evidence of discrimination.
 
 
 37
 First, Sorosky contends that younger managers whose positions at Santa Barbara were eliminated were given the opportunity to transfer to other positions within Burroughs. This argument, however, does nothing to undermine the credibility of Burroughs's "necessary skills" explanation. Sorosky does not present any evidence that he had skills comparable to the employees who were transferred. Nor does he present any evidence that the transferred employees did not have skills necessary to complete the transferred projects.
 
 
 38
 Second, Sorosky argues that a statistical comparison of Burroughs's treatment of the employees at Sorosky's salary grade or higher raises an inference of age discrimination. Sorosky points out that 12.2% of these employees at the Santa Barbara plant were between the ages of 40 and 44, but that this age group represented only 5.9% of the terminated employees. By comparison, 3.3% of these employees were over age 55, but 17.6% of the terminated employees were in this age group. He contends that this shows discrimination against the older employees.
 
 
 39
 There are several problems with this analysis. Sorosky offers no evidence that his conclusions are statistically significant. Indeed, it seems likely that they are not. Seventeen employees at Sorosky's salary grade or higher were terminated, only 7 of whom were over age 40. Sorosky's statistic that 5.9% of the terminated employees were between 40 and 44 simply represents the one person in that age group that was terminated. Similarly, his 17.6% statistic encompasses only three terminated employees. Without more, we cannot conclude that statistics based on a sample of this size are significant. "[S]tatistical evidence derived from an extremely small universe, as in the present case, has little predictive value and must be disregarded." White v. City of San Diego, 605 F.2d 455, 461 (9th Cir.1979).
 
 
 40
 Even were we to accept the significance of Sorosky's figures, his statistics considered as a whole are inconclusive. Of the employees at Sorosky's salary grade or higher, 7.8% were between ages 50 and 54, yet no one in this age group was terminated. If the figures are aggregated to produce more significant results, they show that Burroughs offered to transfer 81% of these employees who were over 40 and 79% who were younger than 40. If anything, this statistic tends to prove an absence of age discrimination. Sorosky's statistical analysis does not reasonably imply discrimination against older employees, let alone intentional discrimination against Sorosky.
 
 
 41
 Third, Sorosky contends evidence that the Burroughs personnel department kept track of his age is direct evidence of discrimination. Sorosky does not, however, point to any evidence that those employees who made the decision to terminate Sorosky were "tracking" his age. The evidence in the record indicates instead that the decision makers were not aware of Sorosky's age, and that the personnel manager who was had nothing to do with the decision to terminate Sorosky.
 
 
 42
 Throughout this analysis, Sorosky retains the burden of proof. Burdine, 450 U.S. 248, 101 S.Ct. 1089. We are to take this into consideration in making our determination. See Celotex, 106 S.Ct. at 2553. Sorosky has failed to produce sufficiently probative evidence of pretext to avoid summary judgment.
 
 VI
 
 43
 Sorosky also challenges two of the district court's prejudgment decisions.
 
 A.
 
 44
 Sorosky argues that the district court improperly denied his motion to amend his complaint. We review this issue for an abuse of discretion. Hurn v. Retirement Fund Trust, 648 F.2d 1252, 1254 (9th Cir.1981) (Hurn ). "The district court must, however, exercise its discretion, and a denial without stated reasons, where the reasons are not readily apparent, constitutes an abuse of discretion." Id.; accord Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Although leave to amend should be freely granted, Fed.R.Civ.P. 15(a), leave may be denied for reasons such as undue delay, bad faith motive, futility of amendment, or prejudice to the opposing party. Hurn, 648 F.2d at 1254.
 
 
 45
 In response to Sorosky's motion to amend the complaint by adding another defendant, the district court stated that it "weighed the motive of adding this defendant at this late date and it is the court's opinion that this defendant is being added to destroy diversity and to destroy the jurisdiction of this court." On appeal, Sorosky's only response is that the fictitious Doe defendants in the complaint had already destroyed diversity, and thus diversity never existed. The question, however, is not whether diversity jurisdiction existed, but instead whether the motion to amend was brought in bad faith. Sorosky did not argue in the district court that the Doe defendants, by themselves, destroyed diversity jurisdiction. Sorosky contended, instead, that diversity would be destroyed if its motion to amend was granted. Therefore, we cannot say that the district court's finding as to Sorosky's motive was clearly erroneous. Because bad faith motive is a proper ground for denying leave to amend, we conclude that the district court did not abuse its discretion by denying Sorosky's motion to add a new defendant.
 
 
 46
 Sorosky also moved to amend his complaint by adding new claims. The district court stated that "[t]hese are state causes of action of pendent claims.... [t]hey will also be dismissed in the entirety. The court has discretion to do that, and I do exercise that discretion, at this time." Although a district court does have discretion whether to exercise jurisdiction over state claims pendent to claims raising a question arising under federal law, see Wren v. Sletten Construction Co., 654 F.2d 529, 536 (9th Cir.1981), a district court does not have discretion to refuse jurisdiction over state claims in a diversity case. The district court clearly believed that its jurisdiction rested on diversity of citizenship because it rejected Sorosky's motion to add a new defendant on this basis. The district court presented no other reason for exercising its discretion to deny the motion to add new claims. Furthermore, from the record before us, it is not "readily apparent" that Sorosky unduly delayed his motion, that the amendment was futile or made in bad faith, or that it prejudiced Burroughs. Nevertheless, neither can we say that the amendment should have been allowed as a matter of law. Therefore, we remand this issue so that the district court can exercise its discretion, and, should it again deny the motion, state adequate reasons for doing so.
 
 B.
 
 47
 Sorosky moved to compel the production of certain documents relating to Burroughs's policies for discharging employees, its reasons for closing facilities, and statements concerning employment security with Burroughs. Burroughs had produced documents relating only to its Santa Barbara and Pasadena facilities where Sorosky worked, arguing that documents relating to its other facilities world-wide would be irrelevant and unnecessarily burdensome to produce. The district court denied Sorosky's motion because the requests were "unnecessarily burdensome and overly broad." We review for an abuse of discretion. Scott and Fetzer Co. v. Dile, 643 F.2d 670, 674-75 (9th Cir.1981).
 
 
 48
 Sorosky's lawsuit was focused on his employment, which occurred only at Santa Barbara and Pasadena. Without a more specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence, we cannot say that the district court abused its discretion in concluding that the burdens of the requests outweighed their potential benefits. We therefore affirm the district court's denial of the motion to compel.
 
 VII
 
 49
 We summarize our conclusions as follows. The district court had subject matter jurisdiction because certain of Sorosky's state law claims were completely preempted by ERISA; the complaint therefore raised a claim under ERISA, and it could have been filed originally in the federal district court. Sorosky does not appeal the entry of summary judgment with respect to his claims arising under ERISA. Sorosky's state law claim for breach of contract/wrongful discharge based on an oral contract was not foreclosed by the California Statute of Frauds. Genuine issues of material fact exist with respect to that oral contract claim and Sorosky's claimed breach of the covenant of good faith and fair dealing. Accordingly, summary judgment is reversed as to these claims. Summary judgment was proper, however, on Sorosky's age discrimination claim. Furthermore, the district court did not abuse its discretion in refusing to allow Sorosky to add another defendant, but did abuse its discretion by giving an invalid reason for denying Sorosky's motion to add new claims, and we remand that issue for further consideration. Finally, the district court did not abuse its discretion in denying Sorosky's motion to compel discovery. Each side shall bear its own costs of appeal.
 
 
 50
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.